[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is a Maine corporation which does business in Connecticut and has an office in Bloomfield, Connecticut. The defendant, John Hychko, a resident of Waterbury, Connecticut, operates Hychko Construction together with his son, Michael. Among the enterprises operated by Hychko, is a rock quarry. Hychko Construction is not incorporated and does not have a trade name certificate on file. The defendant's quarry produces crushed stone which is utilized for various construction purposes like pavement and septic fields.
In about the month of May, 1999, the defendant, John Hychko, called the plaintiff to quote him a price for drilling and blasting at the quarry. In 1998, the parties had had prior business dealings. John Hychko also negotiated that contract on behalf of Hychko Construction as evidenced by a letter dated February 11, 1998 (Plaintiff's Exhibit 9). On or about May 12, 1999, the parties executed a written contract (Plaintiff's Exhibit 1) which provided that the plaintiff would furnish all materials, labor, supervision, machinery, equipment, tools and necessary supplies to drill and blast at the defendant's quarry in Waterbury, Connecticut. The price was determined by the number of cubic yards of material produced by the blasts. The contract further provided, "Maine Drilling Blasting, Inc. is not responsible for any costs incurred by Contractor (Owner) on its behalf unless Contractor (Owner) and MD B agree in writing to such before Contractor (Owner) incurs any expense that it is doing so on Maine Drilling Blasting, Inc.'s behalf." There was no such writing in this case.
The plaintiff performed two separate blasts for the defendant at his quarry on June 1 and June 10, 1999 respectively. Shot number one produced 2,922 cubic yards of material and shot number two produced 4,353 cubic yards. Based on the contract price, the total sums claimed by the plaintiff was $18,551.10.
According to the testimony of plaintiff's expert, an employee who is professionally licensed in several states to perform blasting, each blast takes several days of preparation, roughly three to four. The plaintiff must determine the area to be blasted, lay out the drill pattern and drill the holes in which explosives are placed, load the holes with explosives and then conduct the blast. The size of the rock generated from the blast is determined by the size of the blast and the geologic conditions of the site. The plaintiff provided at least two men at the defendant's quarry for a total of nine days. CT Page 2677
The evidence showed that the defendant's business was not a typical quarry operation because there were houses located within three hundred feet of the blast site. That fact limited the size of the explosions to prevent rock and debris from flying too far from the blast site and damaging the structures. The defendant could have agreed to pay the plaintiff for the placement of blast mats which would have prevented flying debris while allowing for a greater amount of explosives. The defendant did not elect that option.
Although the plaintiff billed defendant in a timely manner, the defendant has wholly refused and neglected to pay the plaintiff. Initially, the defendant told the plaintiff that he was remortgaging the property and would pay plaintiff from the proceeds. The defendant has since presented a counterclaim alleging that he incurred an expense of $25,550.00 for having to break-up oversized rock produced by the blasts. His invoice for same is not itemized. His invoice is dated August 27, 1999, a full two months after the plaintiff last performed work for the defendant. The invoice was allegedly mailed to the plaintiff, but the address to which same was allegedly sent is Gardiner, Massachusetts, not Gardiner, Maine, where the plaintiff's principal office is located. More significantly, oversized rock, that is rock too large to be placed in a crusher, is anticipated by the parties. In fact, the defendant owned a hydraulic hammer which is designed to break oversized rock. The court gives no credence whatever to the counterclaim. The evidence showed that after the two blasts in 1999, John Hychko again contacted the plaintiff to see if it were interested in blasting another site for him. The plaintiff declined because of the outstanding balance due from Hychko. That subsequent contact of the plaintiff by the defendant contradicts defendant's claims.
The defendant also avers that Michael Hychko, not John Hychko, operates the quarry and that it was Michael who signed the contract as well as negotiated it. While Michael Hychko did sign the contract, he was authorized by his father to do so. There is not doubt in the court's mind, however, the John Hychko negotiated the contract in question, as he had in prior dealings with the plaintiff, and that John Hychko is the man in charge. He keeps an office on the property and is there on a daily basis. In a videotape of the second blast introduced in evidence by the defendant (Defendant's Exhibit C) John Hychko is seen immediately after the blast inspecting the blast site.
In a nutshell, the credibility of the witnesses was very much an issue in this case. The court has resolved that issue in favor of the plaintiff. CT Page 2678
The contract provides for interest at the rate of One and One-Half Percent per month on unpaid balances after thirty days of their presentment for payment and the court awards judgment for the plaintiff on the First Count in the sum of $18,551.25 principal plus interest from August 1, 1999 through February 28, 2002 totaling $8,348.07 plus costs. There is no need to discuss other claims of the plaintiff.
BY THE COURT
SCHEINBLUM, J.